*Court of Common Pleas, Dauphin County, March 25th, 1861.*

SMITH v. THE NORTHERN CENTRAL RAILWAY COMPANY.

Where a main trunk railway company furnished the motive power, engineers, and conductors to transport the cars of another intersecting railway company on its road, it is responsible for an injury done to a brakesman employed by and on the cars of the intersecting company, through the negligence of its engineer.

Such brakesman is not a servant or employee of the first-named company so as to protect it from responsibility.

The proper test of service is to consider who employs, pays, and has the right to discharge such brakesman.

The burden of proof rests on the person suing in such cases, and to justify a recovery he must show that carelessness or want of skill in the engineer caused the injury.

In such a case the measure of damages is the pecuniary loss sustained; no allowance can be made for the suffering.

CHARGE OF THE COURT.—This suit is brought against the Northern Central Railway Company, a corporation whose road extends from Baltimore to Sunbury.　It is what may be called a main trunk road, intersected with many lateral ones constructed by

other companies. It seemed to be a settled arrangement for these intersecting roads to send their trains of cars by their own motive power to the point of junction, whence they are transported on the defendant's road by its locomotives to the place of market for the articles transported, mainly coal and lumber. The whole train is under the control of the defendant's conductors, but the lateral companies employ their own brakesmen, who accompany their cars both going and returning. It is their duty to obey the orders of the conductors, and the signals of the engineers in running the train.

The plaintiff, a brakesman in the employment of the Trevorton Coal Company, had gone to Baltimore with some of their cars loaded with coal, and was on his way returning with the empty cars, when the injury complained of in the present action occurred. The train consisted in all of some seventy unloaded cars, of which some ten or twelve, and perhaps more, belonged to the Trevorton Company. They were under the care of two of the brakesmen of that company, and the whole train was under the general charge of one of the defendant's conductors, and drawn as usual by one of its engines.

In the neighborhood of Fairview, from some cause, a matter of dispute, the plaintiff was thrown from the train, his arm badly broken, and after suffering with it for some three months, it was necessarily amputated to save his life. The engineer in charge of the motive power, it is conceded, was in the employment of the Northern Central Company. Thus far, the facts are undisputed. The plaintiff avers, and has introduced evidence to show, that when they approached the bridge at Fairview, the engineer gave the signal for "down brakes," which was obeyed by the brakesmen; that after passing the bridge with the engine, which was done at very slow speed, it was the duty of the engineer to signal "up brakes," which was neglected. That after such signal, the speed of the engine should be gradually increased, until proper motion was given to the train, instead of which, without any proper warning, and whilst the men were bearing on the brakes, the engineer started with such violence that he broke the train apart where the plaintiff was standing, threw him on the track, and caused the injury.

(Here the court called the attention of the jury to the matters testified by the witnesses on both sides, and then proceeded:)

The plaintiff's action is predicated on the negligence or want of skill of the defendant's servant, and the *onus probandi* rests on him to show to your reasonable satisfaction, that the injury he received arose from the want of the one or the other. If from either, it is answerable, as every one is bound to employ persons of skill, who will use due care in the management of their business. . If the servant does an intentional injury, the employer is not

responsible. The plaintiff's case is unlike that of a passenger for hire, with whom there is a contract to carry safely, and who has only to show his injury, and thus throw the whole burden of proof on the transporting company. The plaintiff avers negligence in his narr, and must prove it. If you are left in doubt and uncertainty as to what caused the injury, whether it arose from the neglect of duty of the engineer, in not giving the proper signals, or his rash and imprudent manner of starting the train, as contended by the plaintiff, or from the improper fastenings of the Trevorton Company's cars, as contended by the defendant, the plaintiff cannot recover, as he must prove to your reasonable satisfaction that he was injured by the carelessness of the defendant's servants as laid. If the signal for "up brakes" was given, and not obeyed by the plaintiff, and the engineer also was guilty of rashness or negligence in starting, and both causes combined contributed to the injury, the plaintiff cannot recover. He must show the want of skill and care on part of the defendant's servants, and that he was not himself in anywise in default. Mutual negligence destroys all right of action by either party. If this was an *inevitable accident,* there can be no recovery; such things are treated as the act of God, for which no one is responsible.

(Here the court called the attention of the jury to the introductory facts as proved by the witnesses, the broken link found on the road, etc., and referred the whole to them with the observation:)

That if the link was of the size and kind, and broken as stated, it might be some evidence from which you can judge of the violence or gentleness of the start after crossing the bridge. You must be satisfied that the plaintiff was at his proper place, on the Trevorton Company's car, and in the performance of his duty, and guilty of no negligence, before you can find a verdict in his favor, and also that his injury arose from the negligence, rashness, or want of skill or care of the plaintiff's servant. If Lewis Smith was a servant of the Northern Central Company, we consider it very clear he cannot sustain the present action. That principle is too well settled to be now shaken, unless the courts are prepared to disregard and overturn all the rules which govern the relation of master and servant, and their responsibilities to each other. The attempted distinctions between servants of different grades, we consider equally fallacious; but the important question is, was the plaintiff the defendant's servant at the time? He was under the control of its conductor, bound to obey his orders, and follow the signals of its engineer. But he was hired by the Trevorton Company, had charge of its cars as brakesman, could not be placed on any others, and came on the defendant's road with them where the roads separated. That company alone could discharge him from service, and if in the course of this business as a brakesman, he was guilty of negligence by which the

Northern Central Company's property was injured, the Trevorton Company would be responsible for the neglect of its servant. The method of determining whose servant he was when injured, is to consider who employed and paid him, for whom did he labor, who could discharge him, and who would be responsible for his acts, pay the damage sustained by others through his want of skill and diligence. The answer to all or either of these questions shows that he was the servant of the Trevorton Company. He would be without remedy against that company if injured through the bad construction of its cars, or the negligence of his fellow-brakesmen in its employment, but would have a remedy if injured by the servant of another company, or through the defects in its road or machinery, and the Trevorton Company would be answerable to the Northern Central for damages arising from his default. It is said that the establishment of such a principle will be attended with great evil and difficulty in this country, from the vast number of roads which are connected in business like these, and the almost impossibility of determining from whose act or neglect the injury arose. We can only say that where that cannot be ascertained, there can be no recovery. The action will only lie for negligence, want of skill, or gross and manifest defect in the road or machinery, to be proved and made manifest by the person suing. He does not stand in the light of a passenger, with whom there is an implied contract to carry safely, is more like an outsider who crosses the railroad track in the course of business, and is injured, and on whom rests the duty of proving negligence. We do not see anything in the nature or character of the plaintiff's employment, or connection with this company, which stands in the way of his recovery, and the question of negligence, with most other disputed points in the present case, are for the jury, and must be by it carefully considered and decided. If the main trunk railway companies of the country consider that the principles laid down are likely to operate with too much severity on their interest, they must take care to guard against them by contract.

If you are satisfied that from the facts of the case and the principles of law we have laid down for your guidance, the plaintiff is entitled to recover, the next question for your consideration is the amount of damages.

I am not disposed to say that there is any certain rule on this subject for your guidance and government.

It is not a case for punitive or exemplary damages, even if you believe the conduct of the engineer was grossly negligent and improper. You must bear in mind that the defendant is a corporation, created for a highly important public purpose, constructing a railroad at great expense for the benefit of the community at large, quite as much or more than for its stockholders, and that

[Smith *v.* The Northern Central Railway Company.]

it cannot by any possibility, conduct its business without the employment of a vast number of agents and laborers in various capacities.　It rarely happens that either the president, managers, or any of the stockholders possess the requisite skill to run a locomotive engine, and few, if any of them, would make good and efficient conductors, firemen, or brakesmen.　They are therefore obliged to invoke the aid of those who have the knowledge required; and although they must at their peril select careful and skilful servants, and are answerable for their want of either, yet the damages should in no case be more than barely compensatory, unless the company would knowingly employ inefficient men, or retain them after their incompetency or carelessness was discovered.　In the present case it is not shown that the engineer was unskilful, or had ever before met with any mishap from any cause whatever.

If you give damages, they can only be compensatory.　What will remunerate the plaintiff for his loss?　There is no doubt that for some three months he was entirely unable to labor in any way, during which time he was put to very considerable expense, and suffered great pain.　For the latter, a pecuniary compenation cannot be made; no amount of money will remunerate for great bodily suffering, and yet it necessarily to some extent enters into the consideration of a jury.　The loss of time and expenses incurred are proper objects of calculation, but the jury will not only consider the past, but the liminished ability of the plaintiff to earn a subsistence in future; that he will, through the whole residue of his life, be obliged to labor under the inconvenience of depending on one hand for support, and be deprived of the chance of pursuing many avocations which would be open to him if sound and entire as before the injury.　You can scarcely estimate the amount of loss to a young, healthy, and vigorous person from such a deprivation.　Yet you must be careful not to run into any excess.　In some of the States, where, as in ours, compensation is permitted to be received by the relatives for loss of life, the law has provided that the damage shall in no case exceed five thousand dollars; and the courts have there held that by implication, something less must be given for a smaller injury.　We have not even that guide in Pennsylvania, as there is no limit fixed by our law in case of the destruction of life.　We can therefore say that you must carefully consider all the circumstances surrounding the case, and if you give the plaintiff damages, they must be no more than will compensate him for his actual pecuniary loss, present and prospective, and his diminished means of earning a livelihood.

*Lamberton,* for *plaintiff.*

*Kunkel and Casey,* for *defendant.*